IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Criminal No. 2:16-CR-022-D |
| VS. | § | |
| | § | |
| JOSE ANGEL CANAS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In a motion to compel discovery, defendant Jose Angel Canas ("Canas") requests that the court compel the government to test for purity units of seized methamphetamine that were not previously tested, or, alternatively, to require that the government produce these units so that the defense can conduct an independent chemical analysis. For the reasons that follow, the court denies the motion to compel testing by the government and conditionally grants the alternative request that the government produce these units to the defense for independent chemical analysis.

I

During a search of the attic of Canas' residence, Amarillo, Texas police located several bundles of a substance suspected to be methamphetamine.[1] Canas was later charged with, and pleaded guilty to, the offense of possession with intent to distribute 500 grams or

---

[1]The court's recitation of the background facts and procedural history is taken from the factual resume and the parties' briefs.

more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii).  He has not yet been sentenced.

During a telephone conference with government counsel and Theodore Chapman ("Chapman"), a forensic chemist employed by the Drug Enforcement Agency ("DEA"), Canas' attorney learned that the methamphetamine seized from his residence had been broken down into 39 units, of which 10 units had been tested for purity.  According to Canas' instant motion, this selection was based on obtaining samples from the largest units of the three types of packaging.  But Chapman was not able to provide the weight of each individual unit or of the composite as a whole; he stated that the units are not uniform in amount, and not all are labeled; he received a variety of bags of methamphetamine, each bag was considered one unit, and, of the 13 bundles recovered, multiple bags were found inside and broken down into 39 units; and he could not indicate which bags constituted the 10 units that were tested, or that it even contained a sample from each of the 13 bundles.  Canas therefore maintains that it can be deduced that the purity analysis extrapolated to the total amount of methamphetamine is inaccurate.  He moves the court to compel the government to test the 29 units that the DEA did not test, and account for, and weigh, all of the 39 units. In the alternative, Canas moves the court to compel the government to produce samples from the 29 units that were not tested so that the defense can conduct an independent analysis of the substance.  Canas represents that he has located an FDA-registered and DEA-licensed laboratory—Avomeen Analytical Services ("Avomeen")—that is willing to conduct an independent chemical analysis of the substance, and that can do so within a turnaround time

of 20 days.[2]  The government opposes Canas' motion, but it requests, in the alternative, that if the court is inclined to grant the motion, the government be given an opportunity to submit a proposed order outlining how the re-testing should be conducted.

II

"A district court may consider estimates of the quantity of drugs for sentencing purposes."  *United States v. Valdez*, 453 F.3d 252, 267 (5th Cir. 2006) (internal quotation marks omitted) (quoting *United States v. Alford*, 142 F.3d 825, 832 (5th Cir. 1998)).  "The court may extrapolate the quantity from any information that has sufficient indicia of reliability to support its probable accuracy."  *Id.* (internal quotation marks and citations omitted); *see also United States v. Cox*, ___ Fed. Appx. ___, 2016 WL 3209221, at *2 (5th Cir. June 9, 2016) (per curiam) ("[T]he court was entitled to extrapolate the [drug] quantity from any information that has sufficient indicia of reliability to support is probable accuracy." (second alteration in original) (internal quotation marks and citation omitted)); *United States v. Sellers*, 589 Fed. Appx. 262, 263 (5th Cir. 2015) (per curiam) (rejecting argument that district court erred when it extrapolated average purity rate for all methamphetamine for which it held defendant accountable because the laboratory on which presentence report ("PSR") relied "lacked sufficient indicia of reliability," and concluding that the district court "was permitted to consider the information contained in the PSR and to extrapolate the drug quantity on which to base [defendant]'s sentence.").

---

[2]Canas also maintains that, if the DEA or the government has lost or destroyed any portion of the methamphetamine, this quantity should not be attributed to him.

Canas has failed to demonstrate that the DEA laboratory report ("Report"), on which the PSR relies, *see* PSR ¶ 14, is not sufficiently reliable.  The Report indicates that, of the 39 units received, methamphetamine was confirmed in the 20 units that were tested.  The Report had a 95% level of confidence that at least 90% of the population contained the substance. A composite was formed from 10 units for further testing.  The net weight was 13.51 kilograms with a substance purity of 94.4%, which resulted in 12.75 kilograms of pure substance.  This calculation is adopted in the PSR.  *See id*.  Additionally, Chapman, the forensic chemist who performed the testing, stated that he selected at least three samples from each of the three types of packaging, and that he selected the largest package from each type of packaging to test for purity.

Canas argues that the Report is inaccurate because "Chapman could not indicate which bags constituted the 10 units that were tested or that it even contained a sample from each of the thirteen bundles," and because "[t]here is reason to believe that the different bags of methamphetamine constituted different batches of methamphetamine, thus, with differing purity levels."  D. Br. 2.  But Canas has not provided any basis for the court to conclude that the different bags contained methamphetamine from different batches, or that if the methamphetamine came from different batches, the purity levels differed in a statistically significant way.  As the government points out in its response, the sentencing guidelines provide the same base offense level (38) so long as the offense involved at least 4.5 kilograms of a mixture consisting of at least 80% methamphetamine.  *See* U.S.S.G. § 2D1.1(c)(1) (assigning a base offense level of 38 for offenses involving at least 4.5 kilograms

of actual methamphetamine or "ice," which is a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity). According to the Report, the total amount of "actual" methamphetamine is 12.75 kilograms, which is almost three times what is required for a base offense level of 38. Therefore, the likelihood that a retest would yield a lower guideline range is "so remote that a retest would be futile." Gov't Br. 3; *see United States v. Rodriguez*, 666 F.3d 944, 947 (5th Cir. 2012) (holding that it was not clear error to infer that unseized drugs had similar purity levels to tested samples, and noting "[t]his is especially true given that the sentencing guidelines recommend the same base offense level so long as the offense involved at least 1.5 kilograms of a mixture consisting of at least 80% methamphetamine. Therefore, the district court only had to conclude that the unseized mixture was more than 80% pure, a conclusion for which there was ample evidence." (footnote omitted)). Nor has Canas provided any other reason, beyond his pure speculation, to question the reliability or accuracy of the Report. Accordingly, because Canas has failed to make any showing that would undermine the reliability of the Report, the court denies his motion to compel discovery to the extent he seeks to compel the government to test the 29 units that were not previously tested.

## III

In the alternative, Canas requests that the court compel the government to produce samples of the 29 units that were not previously tested so that Avomeen can conduct an independent chemical analysis. The government opposes this request, but, in the alternative, it requests that if the court is inclined to grant Canas' motion, it be given "the opportunity to

submit a proposed order outlining how the re-testing should be conducted."  Gov't Br. 1.

There is no reason apparent from the record why the court should not authorize Canas to obtain testing from Avomeen of samples of the 29 units that were not previously tested. Accordingly, on the condition that counsel for Canas and the government work collaboratively on a proposed procedure, and submit an order for court approval before the testing is performed, the court grants Canas' alternative request that Avomeen be permitted to conduct an independent chemical analysis test of the 29 units that were not previously tested.

*   *   *

For the foregoing reasons, Canas' motion to compel discovery is denied to the extent he seeks to compel the government to conduct retesting.  Canas' alternative motion to compel the production of samples so that Avomeen can conduct an independent chemical analysis is conditionally granted.

**SO ORDERED**.

October 14, 2016.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE